# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TABITHA DEMING-ANDERSON,

    Plaintiff,

v.

PNC MORTGAGE, a division of PNC BANK,
NATIONAL ASSOCIATION, and DEUTSCHE
BANK TRUST COMPANY AMERICAS AS
TRUSTEE RALI 2007-QS9,

    Defendants.
_____/

Case No. 15-CV-11688

Hon. Denise Page Hood

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION TO STAY REAL PROPERTY REDEMPTION DATE [#11]

### I.   Background

This matter is before the Court on Plaintiff's Emergency Motion to Stay Real Property Redemption Date **[Docket No. 11, filed July 29, 2015]**. Plaintiff Tabatha Deming-Anderson ("Plaintiff") filed a Complaint in this matter on April 8, 2015, Oakland County Circuit Court. Defendants PNC Mortgage, a division of PNC Bank, National Association, (hereinafter "PNC") and Deutsche Bank Trust Company Americas as Trustee RALI 2007-QS9 (hereinafter "Deutsche Bank") removed to this Court on May 12, 2015 **[Docket No. 1]**.

Plaintiff obtained a mortgage in 2007 for a property located 2980 Steeple Hill Rd., White Lake, Michigan (the "property") (Pl.'s Compl., ¶ 1).  The mortgage

was ultimately assigned to Defendant Deutsche Bank on August 2, 2011. PNC was the loan servicer for dates relevant to this case. According to Defendants, Plaintiff defaulted on her monthly Mortgage payment in September, 2010, which prompted Plaintiff to enter into a Loan Modification Agreement with PNC in July, 2011 (Defs.' Resp. at p. 4). In December, 2013, Plaintiff again defaulted on her monthly payment obligation (*Id.*). After PNC sent Plaintiff notice of her default on January 6, 2014, Plaintiff allegedly failed to cure her default (*Id.*). Plaintiff acknowledges in her Complaint that, in March of 2014, Plaintiff fell behind on her mortgage payments (Pl.'s Compl., ¶ 10).

After Plaintiff's default, PNC allegedly initiated the process for non-judicial foreclosure under Michigan law: it published notice of the impending foreclosure for four weeks, from July 2, 2014, to July 23, 2014, and posted notice of the foreclosure on Plaintiff's property on July 5, 2014 (Defs.' Resp. at p. 4). The foreclosure sale was originally scheduled for August 5, 2014 (*Id.*).

Plaintiff alleges that, upon falling behind on her payments, she promptly supplied PNC with the materials necessary for PNC to process Plaintiff's claim for mortgage assistance (Pl.'s Compl., ¶¶ 11-12). In response, however, PNC allegedly requested a number of additional documents as well as documents that had already been sent to PNC, allegedly creating an "atmosphere of confusion."

2

(Pl.'s Compl., ¶ 13). PNC alleges that it received a complete application package for Loan modification on July 21, 2014.

Plaintiff alleges that PNC failed to evaluate Plaintiff's application within thirty days of receiving it and did not provide Plaintiff written notice of the loan modification options PNC would offer (Pl.'s Compl., ¶ 28), PNC alleges that it did, in fact, evaluate Plaintiff's application, adjourning the August 5, 2014, foreclosure sale to do so, and sent Plaintiff a denial letter on August 18, 2014 (Defs.' Resp. at p. 5). PNC argues that because PNC received Plaintiff's completed application on July 21, 2014, fifteen days before the scheduled foreclosure sale on August 5, 2014, PNC was "under no obligation to review the package" despite the fact that it ultimately did so (*Id.*).

In September, 2014, Plaintiff applied for another loan modification. (Defs.' Resp. at p. 6). She did so with the assistance of attorney Steven Ruza (Pl.'s Compl., ¶ 14). Plaintiff alleges that Ruza's frequent attempts to establish contact with PNC went unacknowledged and unanswered (Pl.'s Compl., ¶ 16). In September, 2014, Ruza ultimately spoke to a PNC representative, Dianne D., who informed Ruza that Plaintiff's application for mortgage assistance had been received, was complete, and would be reviewed (Pl.'s Compl., ¶ 17). Plaintiff alleges that despite this assurance, Plaintiff's counsel was met with chronic unresponsiveness from PNC from September, 2014, until approximately February,

2015 (Pl.'s Compl., ¶ 19).  PNC, however, alleges that on October 16, 2014, it sent Plaintiff a denial letter in connection with Plaintiff's September, 2014, application for a loan modification (Defs.' Resp. at p. 6).

PNC alleges that Plaintiff applied again for a loan modification in November, 2014, and was denied on January 5, 2015.  On January 30, 2015, Ruza contacted PNC representatives, who informed him that Plaintiff's loan modification application had "expired" and that she would have to submit another application (Pl.'s Compl., ¶ 20).  PNC representatives also allegedly communicated that there would not be sufficient time to review a new application, because of an impending sheriff's sale on February 10, 2015 (*Id.*).  Plaintiff allegedly submitted an application for a loan modification on January 30, 2015, although PNC makes no mention of having received this application.

On February 10, 2015, the sheriff's sale took place, triggering the statutory six-month redemption period.  The redemption period is set to expire on August 10, 2015.

Plaintiff filed the instant motion to request a stay of the redemption period. Plaintiff argues that, under Michigan law, courts may grant equitable relief to extend the redemption period "in order to keep a plaintiff's suit viable, provided [plaintiff] makes 'a clear showing of fraud, or irregularity' by the defendant." (Pl.'s Mot. at p. 4).  In her motion, Plaintiff restates allegations of fraud and irregularity

2:15-cv-11688-DPH-MJH Doc # 15 Filed 08/10/15 Pg 5 of 17 Pg ID 234

from her Complaint. Plaintiff also notes that her first attorney, Steven Ruza, was charged with thirty felony counts in May, 2015, and was forced to withdraw from this case. Ruza's fraudulent activity and eventual withdrawal has hampered Plaintiff's case and provides another reason for this Court to provide Plaintiff the equitable relief she seeks.

    Defendants in their response to Plaintiff's motion first note that Plaintiff's motion must be evaluated against the standard for preliminary injunction. They then argue that Plaintiff has failed to demonstrate likelihood of success on the merits, which is fatal to Plaintiff's request for injunctive relief. Defendants argue that Plaintiff's allegations as presented in her Complaint fail as a matter of law or are barred for other reasons. Defendants also argue that Plaintiff has failed to establish the other elements necessary for injunctive relief, namely, that Plaintiff will suffer irreparable harm without the injunction that harm will occur to others without the injunction, and that granting the relief requested is in the public interest.

    Plaintiff, in her reply to Defendants' brief, clarifies that she seeks a stay, or tolling, of the redemption period, not a preliminary injunction. Plaintiff concedes that she has not carried her burden to receive injunctive relief but argues that the standard governing whether this Court may grant equitable relief in the form of a stay is different from that of an injunction.

5

## II. Analysis

"Michigan courts allow an 'equitable extension' of the redemption period in a statutory foreclosure case…" *Powers v. Bank of Am., N.A.*, 63 F. Supp. 3d 747, 752 (E.D. Mich. 2014) (citing *El-Seblani v. IndyMac Mortgage Services*, 510 Fed.Appx. 425, 428 (6th Cir. 2013)). To obtain this extension, the plaintiff must clearly show "fraud or irregularities in the foreclosure process that actually prejudiced the mortgagor in preserving his or her interest in the property." *Jarbo v. Bank of New York Mellon*, 587 F. App'x 287, 289 (6th Cir. 2014) *cert. denied*, 135 S. Ct. 1863 (2015) (citation omitted); *see also Powers*, 63 F. Supp. 3d at 752 (holding that "the 'misconduct' that results in the fraud or irregularity '*must relate to the foreclosure procedure itself.*'" (emphasis added) (quoting *El–Seblani,* 510 Fed.Appx. at 429). According to the Sixth Circuit, the standards for obtaining this exception are "stringent." *El-Seblani*, 510 Fed.Appx. at 429; *see also United States v. Garno*, 974 F.Supp. 628, 633 ("The Michigan Supreme Court has held that it would require a *strong case* of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.") (emphasis added) (citing *Detroit Trust Co. v. Agozzinio,* 280 Mich. 402, 405–406 (1937) and *Calaveras Timber Co. v. Michigan Trust Co.,* 278 Mich. 445, 450 (1936)).

Michigan courts have not "'defined what constitutes an irregularity' sufficient to set aside a foreclosure." *Powers*, 63 F. Supp. 3d at 752 (quoting *PHH*

*Mortg. Corp. v. O'Neal*, No. 311233, 2013 WL 3025566, at *5 (Mich. Ct. App. June 18, 2013). In other contexts, courts have defined an irregularity as a "proceeding that is taken without any foundation for it or that is essentially defective," *Jenness v. St. Clair Circuit Judge,* 42 Mich. 469, 471 (1880) or as the "want of adherence to some prescribed rule or mode of proceeding," *Turrill v. Walker*, 4 Mich. 177, 183 (1856). "'[T]he simple existence of an irregularity is insufficient; it must rise to a particular level before a foreclosure sale will be set aside.'" *Powers*, 63 F. Supp. 3d at 752 (quoting *PHH Mortg. Corp. v. O'Neal*, No. 311233, 2013 WL 3025566, at *5 (Mich. Ct. App. June 18, 2013). In *Powers*, for example, the court extended the redemption period when there were "serious questions" about whether the plaintiffs had even defaulted on their mortgage. 63 F. Supp. 3d at 753.

A plaintiff must be able to show that she was prejudiced by the alleged fraud or irregularities in the foreclosure process. The test for prejudice is whether plaintiffs "would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012). In *Powers*, the court held that "plaintiffs can easily establish prejudice if they did not default on their loans but were made to endure foreclosure proceedings with the potential loss of their residence." 63 F. Supp. 3d at 753. In *Kim*, the majority cited a Michigan Appeals

Court case in which that court did not find sufficient prejudice to justify setting aside a foreclosure sale when occurred five days earlier than it was scheduled, observing that the mortgagor had not attempted to redeem the property at any point during the redemption period. *Kim*, 493 Mich. 98, 115-116 (citing *Jackson Inv. Corp. v. Pittsfield Products, Inc.*, 162 Mich. App. 750, 756 (1987)).

### A. RESPA

Plaintiff has made allegations of fraud and irregularity, but Plaintiff has failed to produce any evidence supporting any of her allegations for fraud or irregularity. Plaintiff admits as much in her Motion. ("Plaintiff has plead fraud…Plaintiff has also alleged many irregularities in the foreclosure process for the Anderson Home.) (Pl.'s Mot. at 4-5).

Plaintiff alleges that Defendants violated 12 C.F.R. 1024.38(b)(2) by failing to maintain policies and procedures in accordance with the Home Affordable Modification Program ("HAMP") guidelines. This Court need not address Plaintiff's substantive claim because Plaintiff has no right of action under 12 C.F.R. § 1024.38. As the Consumer Financial Protection Bureau noted in its final rule adopting this regulation,

> "Ultimately, the Bureau agrees with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk…The Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38 respectively, would provide robust consumer protection without subjecting

servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38."

78 Fed. Reg. 10778-10779.

The Sixth Circuit has recently confirmed that "HAMP and its enabling statute do not contain a federal right of action." *Olson v. Merrill Lynch Credit Corp.*, 576 F. App'x 506, 511 (6th Cir. 2014) (citation omitted), *cert. denied,* 135 S. Ct. 1549 (2015).

Plaintiff alleges that Defendants violated 12 C.F.R. § 1024.41(c) by failing to evaluate Plaintiff within thirty days for all potential loss mitigation options and provide Plaintiff with written notice within thirty days of which loan modification option it would offer.

12 C.F.R. § 1024.41(c)(1)(i) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall…[e]valuate the borrower for all loss mitigation options available to the borrower." 12 C.F.R. § 1024.41. The regulation states clearly that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *Id.*

Here, PNC provided denial letters within thirty days of each of Plaintiff's applications for loan modifications that were ultimately denied (Defs.' Resp., Exhibits G, I, J). With regards to Plaintiff's July, 2014, application, PNC received

9

it fewer than thirty-seven days before the scheduled foreclosure sale on August 5, 2015, and was therefore under no obligation to review Plaintiff's applications. Plaintiff failed to make a clear showing of irregularity.

Plaintiff alleges that Defendants violated 12 C.F.R. § 1024.41(d) by "at least implicitly denying Plaintiff a loan modification without providing in writing the specific reason or reasons for the denial, and for which loss mitigation options she was evaluated for" (Pl.'s Compl., ¶ 29). In relevant part, 12 C.F.R. § 1024.41(d) states, "[i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria." 12 C.F.R. § 1024.41 (d).

In the October 16, 2014, letter from PNC to Plaintiff, PNC states that Plaintiff's hardship application was received but cannot be reviewed because the complete application was not received with the required timeframe before the foreclosure sale date or Plaintiff is otherwise ineligible for review (Defs.' Resp., Ex. I). In the January 8, 2015, letter from PNC to Plaintiff, PNC states that PNC cannot offer Plaintiff a Home Affordable Modification, because she did not

provide all the requested documents. PNC provided sufficient reasons for why Plaintiff was being denied.

Plaintiff alleges that Defendants violated 12 C.F.R. § 1024.41(f)(2) "by noticing Plaintiff's home for a foreclosure sale on 8/05/2014, 12/30/2014, and 2/10/2015, despite the fact that Plaintiff had submitted multiple complete loss mitigation packages, prior to the foreclosure notice being posted, where Plaintiff was never sent a proper written notice in response to these modification requests stating that she was ineligible for a loan modification, and where Plaintiff never rejected nor failed to perform under a loss mitigation option." (Pl.'s Compl., ¶ 30).

12 C.F.R. § 1024.41(f)(1) defines the "pre-foreclosure review period" and states in relevant part that "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless a borrower's mortgage loan obligation is more than 120 days delinquent." 12 C.F.R. § 1024.41. If a borrower submits a complete loss mitigation application during this "pre-foreclosure review period," "a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless (i) The servicer has sent the borrower a notice…that the borrower is not eligible for any loss mitigation option…(ii) The borrower rejects all loss mitigation options offered by the servicer, or (iii) The borrower fails to

perform under an agreement on a loss mitigation option." 12 C.F.R. § 1024.41(f)(2)(i-iii).

Here, Defendants argue that Defendants first noticed the Property for foreclosure on July 2, 2014, far more than 120 days after Plaintiff allegedly defaulted on her mortgage payment in December 2013 and before PNC received Plaintiff's complete loss mitigation package on July 21, 2014. Despite the fact that PNC was under no obligation to review this application, given that it was submitted fewer than thirty-seven days before the scheduled foreclosure sale, PNC did so anyway and found that Plaintiff was not eligible for loan modification.

Plaintiff has not made a strong case for irregularity based on the requirements set forth in 12 C.F.R. § 1024.41.

### B. Negligence

Plaintiff alleges that, under 12 C.F.R. §§ 1024.38 and 1024.41, Defendants "had a duty to exercise reasonable care in performing the evaluation of Plaintiff for a loan modification" (Pl.'s Compl., ¶ 37). 12 C.F.R. § 1024.41 makes only two references to "reasonable diligence." First, it states that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). Second, it states that "if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation

12

application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option." 12 C.F.R. § 1024.41(c)(2)(ii). Neither of these statements appears to impose on the servicer a duty to exercise "reasonable care in performing the evaluation of Plaintiff for a loan modification." As this Court has previously held, "Michigan law does not impose a legal duty between a lender and a borrower, so there can be no breach of a duty for purposes of stating a negligence claim." *Nat'l City Bank v. Syatt Realty Grp., Inc.*, No. 07-CV-12438, 2011 WL 8144, at *7 (E.D. Mich. Jan. 3, 2011) *rev'd on other grounds,* 497 F. App'x 465 (6th Cir. Aug. 29, 2012).

Here, Plaintiff has cited no authority for the proposition that Defendants owed Plaintiff a duty of care. Plaintiff has also provided no evidence supporting her allegations of negligence, one of which is that Defendants "carelessly" let Plaintiff's documents expire.

### C. Wrongful Foreclosure

Plaintiff alleges that Defendants failed to comply with MCL 600.3201 by failing to notify Plaintiff in writing of pending foreclosure proceedings; to post notice of the foreclosure sale four times in the newspaper; and "calculate the

amount due and owing with all costs and fees as of the date of the Sheriff sale held on 2/10/2015" (Pl.'s Compl., ¶ 43).

With respect to notice, MCL 600.3208 provides that notice of foreclosure "shall be given by publishing the same for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises included in the mortgage…or some part of them, are situated." Mich. Comp. Laws § 600.3208. Within fifteen days of the first publication of the notice, a copy of such notice "shall be posted in a conspicuous place upon any part of the premises described in the notice." *Id.* This section makes no reference to an independent requirement to notify mortgagees in writing of pending foreclosure proceedings.

Here, the Defendants have furnished evidence that notice of the foreclosure was published for four consecutive weeks, from July 2, 2014 to July 23, 2014, and that notice was attached to the Property itself (Defs.' Resp., Ex. F). Plaintiff has failed to make a strong showing of irregularity.

With respect to the calculation of the amount due and other fees as of the Sheriff's sale, it is unclear to this Court as to which section within MCL 600.3201 this allegation pertains. Even if PNC failed to properly "calculate the amount due and owing with all costs and fees as of the date of the Sheriff sale held on 2/10/2015," it is unclear that this failure prejudiced Plaintiff. Plaintiff has

produced no evidence indicating that, had the amounts calculated been differently from what they were, she had any intention to or was able to redeem the property.

### D. Breach of Contract and Promissory Estoppel

Plaintiff alleges that PNC is subject to the implied covenant of good faith and fair dealings in every contract, and breached its implied covenant of good faith and fair dealings by failing to mitigate damages by failing to offer home retention options to Plaintiff, failing to properly evaluate Plaintiff for assistance, and misleading Plaintiff about her prequalification for loss mitigation options (Pl.'s Compl., ¶ 47).

"Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006) (citing *Belle Isle Grill Corp. v. Detroit*, 256 Mich.App. 463, 476, 666 N.W.2d 271 (2003)). The Sixth Circuit has recognized an exception to that rule when parties agree to defer decision on a particular term of the contract to one party. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). Loan modification does not fall within this exception, and therefore, this claim fails. *See Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. 2012) (Court rejects argument that defendant had duty to exercise its discretion in good faith with regards to loan modification).

### E. Fraud

Plaintiff does no more in her Complaint or Motion than allege the elements of fraudulent misrepresentation. She alleges:

> That the representations made by Defendant to Plaintiff were false statements of facts. That Defendant knew that the representations, when made, were false. That Defendant intended to induce Plaintiff to refrain from defending the foreclosure in reliance on the representations made by Defendant. That Plaintiff's reliance on the representations made by Defendant was justifiable in her refraining from challenging the foreclosure. That irreparable damage will accrue to Plaintiff…unless the Sheriff's deed is rescinded.

(Pl.'s Compl., ¶¶ 49-53).

As this Circuit has held, fraudulent misrepresentation claims "must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Olson*, 576 Fed. Appx. at 510-511; *see also Smith v. Bank of Am. Corp.*, 485 Fed. Appx. 749, 752-753 (6th Cir. 2012) (holding that the plaintiff must plead the time, place, and content of the misrepresentation). Rule 9(b) states, in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV P. 9(b).

Plaintiff has failed to plead her fraud claim with the requisite particularity. As such, Plaintiff has failed to make strong case establishing fraud for the purpose of arguing for an equitable stay of the redemption period.

### I.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Emergency Motion to Stay Real Property Redemption Date **[Docket No. 11, filed July 29, 2015]** is **DENIED.**

**IT IS SO ORDERED.**

<u>S/Denise Page Hood</u>
**Denise Page Hood**
**United States District Judge**

Dated: August 10, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2015, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
**Case Manager**